IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRAYOLA, LLC, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 15-6270 |
| | : | |
| v. | : | |
| | : | |
| ROBERT BUCKLEY, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

Smith, J.                                                                                                                                                                       April 14, 2016

      In this action, the plaintiff alleges that the defendant breached certain non-compete and non-disclosure restrictive covenants by and after accepting employment with a competitor located in Arkansas, and also that he committed various tortious acts concerning the plaintiff's confidential information.  Currently before the court is the defendant's motion to dismiss in which he argues, *inter alia*, that the court should dismiss the action for improper venue, or in the alternative, transfer the action to the Western District of Arkansas.  The defendant argues that venue is improper here because all of the plaintiff's claims concern conduct that occurred, if at all, in Arkansas, not Pennsylvania.  In response to this argument, the plaintiff suggests that a substantial part of the events giving rise to the claims occurred in Pennsylvania, making venue proper here.  After conducting an evidentiary hearing and reviewing the parties' submissions, the defendant has satisfied his burden to show that venue is improper because most, if not all, of the events or omissions giving rise to the plaintiff's claims occurred in Arkansas.  Accordingly, the court will grant the defendant's motion and transfer the case to the Western District of Arkansas.

## I.   FACTUAL BACKGROUND & PROCEDURAL HISTORY

The plaintiff, Crayola, LLC ("Crayola"), is a leading provider of children's art supplies and art kits.  Compl. at ¶ 2, Doc. No. 1.  Crayola is incorporated in Delaware, and its headquarters are located in Easton, Pennsylvania.  *Id.*; Tr. of 12-30-15 Hrg. ("Hr'g Tr.") at 26–27.[1]  The defendant, Robert Buckley ("Buckley"), is an Arkansas resident.  Compl. at ¶ 3.  Once a Crayola employee, Buckley is now employed by Cra-Z-Art, a division of LaRosa Industries, LLC and a competitor of Crayola.  *Id.* at ¶¶ 3, 25.  Buckley's current employment and the circumstances surrounding it gave rise to this action.

Since 2002, Buckley has lived in Bentonville, Arkansas.  Hr'g Tr. at 14.  On or around November 18, 2013, Crayola hired Buckley to be the Customer Insights Manager in Crayola's Bentonville office.  Compl. at ¶ 9.  This position required Buckley to work primarily with Wal-Mart Stores, Inc. ("Walmart"), a Crayola customer, to ensure Crayola's plans aligned with Walmart's strategy and objectives.  *Id.* at ¶¶ 5, 9.  Walmart is headquartered in Bentonville, and the majority of Buckley's work took place there.  Hr'g Tr. at 14–15.  That said, Buckley on occasion traveled to Crayola's Easton headquarters to attend company meetings, roughly three or four times a year.  *Id.* at 84.  Through the normal course of his duties, including at the Easton meetings, Buckley came into possession of Crayola's confidential and proprietary information. *Id.* at 50, 84–86.

As a condition of employment, Crayola required Buckley to sign an Employment Agreement ("Agreement"), which contained a non-compete clause that lasted for one year following termination of his employment.  Compl. at ¶¶ 10–11.  The Agreement further prohibited Buckley from disclosing or using any of Crayola's confidential information or from

---

[1] Buckley attached a copy of the complete transcript as exhibit A to his reply brief in support of the motion to dismiss.  *See* Doc. Nos. 23-2, 23-3.  Crayola also attached portions of the transcript to its suggestions in opposition to Buckley's motion.  *See* Doc. No. 22-1.

retaining any of Crayola's business records or documents after his employment terminated. *Id.* at ¶ 11. After Buckley signed the Agreement in Bentonville, and pursuant to Crayola's corporate policy, the Bentonville office sent the Agreement to Easton for a countersignature from a member of the Recruiting Committee. Hr'g Tr. at 21, 30, 63.

Buckley's employment with Crayola was brief. He resigned on September 25, 2015, less than two years after his hire date. Compl. at ¶¶ 9, 14. A few days later, Buckley accepted a position at Cra-Z-Art in its Bentonville office. Hr'g. Tr. at 47. This did not sit well with Crayola.

Buckley's representations regarding the nature of his new employment failed to convince Crayola that he had not violated the Agreement. So, on November 20, 2015, Crayola filed a complaint in this court, seeking damages and to preliminarily and permanently enjoin Buckley from working for or disclosing confidential information to Cra-Z-Art. Doc. No. 1. Crayola alleges that Buckley breached the Agreement by seeking employment with and working for a competitor, failing to return Crayola's business records, and disclosing Crayola's confidential and proprietary information to Cra-Z-Art. Compl. at ¶¶ 29–42 (Count I). Crayola also asserts causes of action for conversion, improper procurement of information, and breach of the duty of loyalty. Compl. at ¶¶ 43–68 (Counts II–IV). The primary factual basis for Counts II–IV are that Buckley, before quitting, accessed Crayola's confidential information on his laptop computer and copied it to a flash drive for use at his new job with Cra-Z-Art. *Id.* at ¶¶ 16–22. Most of the material acts in the complaint are alleged to have occurred in Arkansas. None are alleged to have occurred in Pennsylvania.

The court held a telephone conference with the parties on December 21, 2015. During the conference, Buckley's counsel represented that Buckley would be moving to dismiss the

complaint for lack of personal jurisdiction and improper venue. Accordingly, the court scheduled an evidentiary hearing for December 30, 2015 for two purposes: to address factual issues expected to be raised in the motion to dismiss and to hold a hearing on Crayola's motion for a preliminary injunction, if necessary. Doc. No. 15.

On December 28, 2015, Buckley moved to dismiss the complaint for lack of personal jurisdiction, for improper venue, for failure to join an indispensable party or, in the alternative, to transfer venue to the Western District of Arkansas. Doc. No. 16. The court then held an evidentiary hearing on December 30, 2015. Doc. No. 18. During the hearing, the court limited the parties' presentations to evidence and argument relating to the portion of the motion to dismiss dealing with venue. After the hearing and at the court's request, the parties briefed Buckley's motion solely as to venue. Doc. Nos. 22, 24.

## II.   DISCUSSION

As indicated to the parties during the evidentiary hearing, the court became primarily concerned with the issue of venue after reviewing the complaint and Buckley's motion to dismiss. Although Buckley also moves to dismiss the complaint based on a lack of personal jurisdiction, district courts may consider questions of venue in advance of personal jurisdiction "when there is a sound prudential justification for doing so." *Lawyers Funding Grp., LLC v. Harris*, No. CIV.A. 14-6369, 2016 WL 233669, at *4 (E.D. Pa. Jan. 20, 2016) (quoting *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979)). One such justification is if the issue of venue itself is dispositive, so that it is "unnecessary to address the other issues raised by" the defendant. *Pennsylvania Gear Corp. v. Fulton*, No. CIV.A. 98-1538, 1999 WL 80260, at *2 (E.D. Pa. Jan. 26, 1999); *see also Lawyers Funding Grp.*, 2016 WL 233669 at *4 (addressing venue first because it was dispositive); *Leonettl's Frozen Foods, Inc. v. Crew, Inc.*, No. CIV.A. 15-4169,

4

2015 WL 5769228, at *3 n.2 (E.D. Pa. Sept. 30, 2015) (same). Because, here, the court finds venue dispositive, it will not address the additional issues raised in Buckley's motion.

### A. Legal Standard

Venue is governed by statute. As relevant here, plaintiffs may bring a civil action in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]" 28 U.S.C. § 1391(b)(2).[2]

Venue is different than personal jurisdiction, though the two are related. Personal jurisdiction concerns a court's power to bind a given party. Venue concerns which court should hear a claim. The test for each includes a geographical component, and in that way, facts that establish personal jurisdiction may also establish venue. But that is not always the case. As to an out-of-state defendant, minimal contacts with the forum state are often enough to vest a court with personal jurisdiction over that defendant. Not so with venue. "The test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim.'" *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994). For an out-of-state defendant, "a substantial part" of those events or omissions must occur within the district where the action is heard. 28 U.S.C. § 1391(b)(2); *Martino*, 36 F.3d at 293. "Events or omissions that might only have some tangential connection with the dispute in litigation are not enough." *Martino*, 36 F.3d at 294.

The purpose of the statutory restrictions on venue "is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Leroy*, 443 U.S. at 184. Accordingly, Rule 12(b)(3) of the Federal Rules of Civil Procedure allows a defendant to move

---

[2] The parties agree that venue is not proper under § 1391(b)(1) or (b)(3) because Buckley does not reside in the Eastern District of Pennsylvania, and there is at least one venue, the Western District of Arkansas, in which venue is proper.

for dismissal or transfer if venue is improper. Fed. R. Civ. P. 12(b)(3). When so moving, the defendant bears the burden of establishing that venue is improper. *See Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 160 (3d Cir. 2012) (citing *Myers v. Am. Dental Ass'n,* 695 F.2d 716, 724–25 (3d Cir. 1982)).

If venue is improper, a court must dismiss the case or, if in the interest of justice, transfer the case to a proper forum. 28 U.S.C. § 1406. Alternatively, even if venue is proper, a court may still transfer the case to another properly venued forum for the convenience of the parties and witnesses if doing so is in the interest of justice. 28 U.S.C. § 1404(a).

### B.     Analysis

Venue determinations are fact intensive. *See ProModel Corp. v. Story*, No. CIV.A. 07-3735, 2007 WL 4124502, at *3 (E.D. Pa. Nov. 19, 2007). Courts must examine the nature of the claims and the location of the events or omissions giving rise to them. *See Martino*, 36 F.3d at 295. Here, the facts of this case establish that venue is improper before this court. The events and omissions giving rise to Crayola's four claims occurred primarily, if not entirely, in Arkansas.

Crayola's breach of contract claim is based upon the following: (1) Buckley's employment with Cra-Z-Art; (2) his alleged disclosure of Crayola's confidential information to Cra-Z-Art; and (3) his alleged failure to return Crayola's confidential information to Crayola upon termination of his employment. The location for each of these alleged events and omissions is the same; if they occurred, they occurred in Arkansas. Buckley is employed in Cra-Z-Art's Bentonville office, and he does not conduct business in Pennsylvania on Cra-Z-Art's behalf. Crayola does not allege that Buckley sought employment with Cra-Z-Art while he was in Pennsylvania, that he disclosed confidential information to Cra-Z-Art while in Pennsylvania, that

6

he wrongfully acquired confidential information while in Pennsylvania, or that any Crayola property that he failed to return was located in Pennsylvania at the time he resigned. No "substantial part of the events or omissions giving rise to the claim" occurred within this district, and so venue here is improper. 28 U.S.C. § 1391(b)(2).

The connections to Pennsylvania are tangential. The contract was primarily negotiated and performed in Arkansas. The fact that a Crayola representative countersigned the Agreement in Easton pursuant to standard corporate policy is not a substantial event giving rise to the claim. *See TJF Assocs., LLC v. Kenneth J. Rotman & Allianex, LLC*, No. CIV.A. 05-705, 2005 WL 1458753, at *7 (E.D. Pa. June 17, 2005) (finding that the formation of a contract is "both logistically and conceptually distinct from the circumstances relating to the alleged breach" and not probative on the question of venue). Nor are Buckley's trips to Easton for business because they were infrequent, and Crayola does not allege that any breaches occurred during those trips. *See Pulse Techs., Inc. v. Dodrill*, No. CIV.A. 06-4549, 2006 WL 3589028, at *1, 5 (E.D. Pa. Dec. 7, 2006) (finding that an out-of-state employee traveling to Pennsylvania "a couple of times a year for company sales meetings and holiday parties" did not establish venue in Pennsylvania). And if financial harm alone was sufficient to establish venue, the protections of § 1391 would be rendered meaningless because a plaintiff could almost always bring suit in any district in which the plaintiff then resided.

Crayola's tort claims in its complaint are all essentially based upon one event: Buckley's alleged copying of confidential information from his laptop to his flash drive.[3] Crayola does not allege that Buckley did this in Pennsylvania; instead, it argues that venue is proper here because

---

[3] Crayola also argues in its brief that Buckley learned confidential information during his meetings in Easton. Again, Crayola does not allege that it was improper when he did so. Had Buckley gone to Easton with the intent to learn that information and disclose it to a competitor, these trips would be a more substantial part of Crayola's claims and accordingly, venue here may well be proper.

7

the data itself is stored on servers located in Pennsylvania. Even so, that fact is tangential to the event giving rise to the claim: copying the file from a laptop to a flash drive. Courts within this district have differed as to whether venue is proper in the district where data is stored when that data is acquired by a wholly out-of-state act. *Compare Ikon Office Sols., Inc. v. Rezente*, No. CIV.A. 09-4178, 2010 WL 395955, at *3 (E.D. Pa. Feb. 3, 2010) (rejecting the plaintiff's arguments that venue was proper where "the data that defendants accessed was stored on computers located in Pennsylvania, [and] the defendants allegedly accessed the data from [out-of-state] computers") *with CertainTeed Corp. v. Nichiha USA, Inc.*, No. CIV.A., 2009 WL 3540796, at *4 (E.D. Pa. Oct. 29, 2009) (considering the fact that the plaintiff "stores its confidential information and trade secrets on computers located in Valley Forge, Pennsylvania" a relevant factor in determining venue); *cf. Paul Green Sch. of Rock Music Franchising, LLC v. Rock Nation, LLC*, No. CIV.A. 08-CV-4503, 2009 WL 129740, at *2 (E.D. Pa. Jan. 13, 2009) ("The location of the trade secret, therefore, is an important part of the events giving rise to plaintiff's claim."). As stated above, questions of venue are case and fact specific. There may well be claims where server location bears on venue, but it does not here. Given cloud storage and the ubiquity of internet use, § 1391(b)(2) would offer little protection for defendants if they could be haled into any district where their data passes through or is remotely stored.

Some courts cite a footnote in *Paolino v. Channel Home Centers*, 668 F.2d 721 (3d Cir. 1981), to state that, for the purposes of venue, the location where a trade secret was originally developed or created is a substantial part of the events giving rise to a claim of theft of such information. *See Harry Miller Co. v. Carr Chem Inc.*, 5 F. Supp. 2d 295, 298 (E.D. Pa. 1998); *see also Rock Nation*, *LLC*, 2009 WL 129740 at *2 (citing *Harry Miller*, 5 F. Supp. 2d at 298). Crayola contends that reasoning should be adopted here. The court does not agree.

In *Paolino*, a case about personal jurisdiction, the court observed that because trade secrets do not have a physical situs, they are deemed to be located where they were developed for the purposes of determining which state's laws governs those trade secrets. *See* 668 F.2d at 724 n.2 ("Trade Secret protection is the creature of state law.") (citing *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470 (1974)). The court further reasoned that an out-of-state defendant's "willful destruction" of a state-created property interest was one contact of many that, on the whole, vested the court with personal jurisdiction over that defendant. *Id.* at 724. Venue was discussed only indirectly and in passing, with the court noting that the case could be transferred under § 1404 should the forum prove inconvenient. *Id.* at 725. *Paolino*'s relevance to Crayola's claims is limited, where no claim arises under the Pennsylvania Uniform Trade Secrets Act. *See* 12 Pa. C.S. §§ 5301–5308. And in any event, *Paolino* was decided prior to the Judicial Improvements Act of 1990, Pub. L. 101-650, 104 Stat. 5089, which introduced the "substantial event or omission" requirement to ensure that cases are tried in "the place where things happened[.]" H.R. REP. NO. 101-734, at 23 (1990). For those reasons, *Paolino* is not probative of the issues presented by this motion.[4]

In light of the foregoing, venue is simply not proper in the Eastern District of Pennsylvania. Section 1406 thus requires the court to either dismiss or transfer the case. Here, it is in the interest of justice to transfer the case to a properly venued forum. Dismissing the case outright would needlessly increase the cost of the action, requiring Crayola to commence a new

---

[4] In a footnote, Crayola suggests that venue is proper here because Crayola's confidential information should be considered to be located in the state of its creation and electronic storage, and § 1391(b)(2) also grants venue in a district where "a substantial part of property that is the subject of the action is situated." The plaintiff does not cite to any case suggesting that this provision applies to either electronically-stored data or a situs that is the product of a legal fiction developed to determine choice of law. The court is persuaded by courts construing that provision to encompass "property disputes or in rem actions." *See, e.g.*, *American High–Income Trust v. AlliedSignal Inc.*, 2002 WL 373473, at *3 (D. Del. Mar. 7, 2002); *Spain v. Eagleburger Law Grp.*, No. 04 CV 01817 WDM PAC, 2006 WL 650191, at *3 (D. Colo. Mar. 9, 2006). Crayola is not seeking the return of or title to any property presently located within this district, and so venue is not proper under this provision.

9

action in a new forum.  Given the request for preliminary relief, both parties have an interest in resolving the dispute quickly so that Crayola can be assured that its proprietary information is protected and Buckley can know the permissible scope of his employment.  Accordingly, the interests of justice favor transfer, rather than dismissal.

Were venue proper in this district, the court would still transfer the case.  A trial court has discretion to transfer a case "[f]or the convenience of parties and witnesses" "to any other district or division where it might have been brought" if doing so is in the "interest of justice[.]"  28 U.S.C. § 1404(a).  When deciding whether such a transfer is in the interest of justice, the trial court must consider both public and private factors.  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995).

The private factors include (1) the plaintiff's forum preference; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of the books and records.[5]  *Id.* at 879.

The public factors include (1) the enforceability of the judgment; (2) practical considerations that could make trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.  *Id.* at 879–80.

Consideration of these factors weighs in favor of transfer.  Again, the claims arose in Arkansas.  The majority of relevant evidence and witnesses are located there. It is easier for Crayola, a national business with an office in Arkansas, to litigate their claims in Arkansas than

---

[5] The "technological advances of recent years have significantly reduced the weight" accorded to the location of books and records because those records and other files may be accessed and transmitted remotely.  *Lomanno v. Black*, 285 F. Supp. 2d 637, 647 (E.D. Pa. 2003).

it is for Buckley, an Arkansas resident, to defend himself in a civil action in Pennsylvania. A court in Arkansas can more easily enforce any injunctive relief, which if granted, will necessarily involve the conduct of persons residing in Arkansas, and Arkansas has a greater interest than Pennsylvania in resolving contract disputes involving those employed within Arkansan borders. Only Crayola's preference counsels against transfer. While a plaintiff's forum preference is given priority when the plaintiff brings an action in a properly venued forum, the plaintiff's preference alone is not enough. The other factors largely are relatively neutral as to the proper venue.[6]

### III.   CONCLUSION

Buckley has satisfied his burden to show that venue in this district is improper. Virtually every event or omission giving rise to Crayola's claims took place in Arkansas. Finding it in the interest of justice to transfer the case rather than dismiss, the court will transfer the case to the Western District of Arkansas.

A separate order follows.

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

[6] An exception may be the familiarity with applicable state law. The Agreement did not specify that Pennsylvania law applies. As noted above, the Agreement was primarily negotiated and executed in Arkansas, and the alleged tortious acts occurred in Arkansas, suggesting that Arkansas law applies, which favors transfer. However, federal courts sitting in diversity "apply the choice of law rules of the state" in which they sit, so the Western District of Arkansas will determine what law applies. *See Regents of Mercersburg Coll. v. Republic Franklin Ins. Co.*, 458 F.3d 159, 163 (3d Cir. 2006) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)); *Winter v. Novartis Pharm. Corp.*, 739 F.3d 405, 410 (8th Cir. 2014) (same). But even if Arkansas choice-of-law rules dictated Pennsylvania state law applies to this dispute, in whole or in part, the balance still would not tip in favor of trying the case here given the significance of the other factors weighing in favor of transfer.